UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VENSON BRADLEY,

    Petitioner,

v.                                                 Case No. 2:07-cv-254
                                                 HON. R. ALLAN EDGAR

DAN QUIGLEY,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Venson Bradley filed this petition for writ of habeas corpus challenging his prison sentence for armed robbery in violation of MCL § 750.529. Petitioner received a sentence of 8 to 20 years imprisonment after he had entered into a plea agreement. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

    Petitioner claims:

    I. Whether the trial court erred when it denied the defendant's request to be resentenced and correct an invalid sentence based on his disproportionate sentence and the improper scoring of his guidelines.

    II. Whether this court should, in view of its recent ruling in *People v. Franciso*, 474 Mich 82 (2006), remand defendant's case to the trial court for resentencing because the trial court clearly used two dismissed felonies which occurred contemporaneous to defendant

committing the instant offense thereby resulting in the trial court erroneously scoring defendant for 25 points of OV 13, where had OV 13 not been mis-scored contrary to MCL 777.43(1)(b), defendant's sentencing guidelines would have been nearly a year less than the minimum sentence defendant actually received since, under *Franciso*, *Supra*, as it is currently interpreted defendant should have been scored zero (0) OV 13.

At the sentencing hearing, the court gave reasons for sentencing petitioner differently than petitioner's co-defendant. The court stated:

> THE COURT: All right. With respect to both the other defendant, Mr. Springer, and Mr. Bradley, both were the recipient of plea bargains that allowed the Court, frankly, if we were to be consistent with the plea bargain, actually require the Court to sentence below guidelines on each case. So there was a downward departure in the Springer case, and if the Court goes along with the plea bargain here today, would be a downward departure on the Bradley case as well.
>
> The Bradley sentencing guidelines have been scored out at 108 to 180 months. We would note that the guidelines for the co-defendant, Mr. Springer, scored out at 126 to 210 months. So counsel for Mr. Bradley here is correct, that the guidelines were higher for the co-defendant, who, by the way, was 54 years of age, the defendant here is 23 years of age. And we would note the plea bargain relative to the -- Mr. Springer, provided for a sentence within the range of 36 to 108 months, and the Court sentenced him, gave him a minimum within that range, it wasn't at the top of it.
>
> In this particular instance, the prosecutor recommended an eight-year cap on the minimum, utilizing plea bargain guidelines at zero to 96 months, which are lower than the plea bargain guidelines on the other case as well, so I'll take that into account in handing down a sentence here.
>
> But I would also note a couple of other things. One is that the defendant in the Springer case, as part of the plea bargain, entered into an agreement to provide truthful testimony against the co-defendants, and, you know, maybe he was the first to agree to that. Maybe Mr. Bradley could have done that. I don't know whether he was given that offer or not, but all I do know is that Mr. Springer took advantage of it.

Secondly, and importantly, the Court would note that Mr. Springer entered his plea during what can best be described as a criminal settlement week, and criminal settlement week involved the bringing in of numerous defendants who were provided the opportunity at that time to enter pleas of guilty, and I must say that in the course of that whole week, the prosecutors were, for lack of a better word, about as generous as one could expect them to be, and the Court went out of its way, also, to be involved in an effort to try to resolve cases. I rather suspect, while it's not part of the presentence on Mr. Springer, that there might have been some discussions with counsel even in chambers that I would be somewhat in the middle range if he entered a plea to that.

I also suspect that Mr. Bradley -- I don't have the direct recollection, but pretty good recollection here that Mr. Bradley came down as part of criminal settlement week as well, and while I don't know what offer was made to him at that time, I believe he decided to turn it down, which, of course, was his right. The Court went to great lengths at that time to tell him, and everyone else who came in and was given a plea offer at that time, that this was the end of it; they either took it at that time or they'd be giving up their right to get a plea agreement. And we obviously moved off of that and accommodated the defendant, in part, I think, because he secured new counsel and we decided we would go ahead and do it. But by allowing him to plead guilty in this negotiated plea agreement, we even went a little bit against what the Court I think personally told Mr. Bradley at the time of criminal settlement week, it's either now or you're giving up the opportunity to do so. And you gave up that opportunity, whatever the offer was at that time, and you may have had good reason to do it, and that's his choice, but it meant that the case stayed on the books for quite a bit longer. And while I'm not positive, I almost think this was a day of trial plea. Did you say it wasn't Mr. Pederson? Pretty close to it?

MR. PEDERSON: I have no memory of it, your Honor, but it's possible.

THE COURT: Obviously, it was well beyond the criminal settlement week, which was back in late December or mid December of last year. So from that reason alone, there's good reason for the Court to hand down a sentence that's different than that handed down to Mr. Springer. But again, there are some other considerations involving testimony.

I was frankly surprised at the sentence I handed down to Mr. Springer, thinking it was pretty reasonable, given the circumstances set forth in the "pre," and again, I think part of that was because of his cooperation and -- or intent to cooperate if need be, and, for example, in this particular case. And it wasn't necessitated because of a plea here.

I think, while counsel is correct that the -- there would be some reasons to treat Mr. Bradley more leniently than Mr. Springer, there are reasons to treat him more harshly than Mr. Springer as well, and this settlement week is certainly part of it. Mr. Springer took advantage of it, and so probably got a better deal than he might otherwise have gotten, so I'm just going to go ahead and sentence the defendant in this matter in the way I think is appropriate.

And what I am going to do here, Mr. Bradley, is order you turned over to the Michigan Department of Corrections to serve a period of incarceration of not less than eight nor more than 20 years, with 377 days' credit for the time you've already served.

I'm going to order that you pay a $60 Crime Victims Rights fee, and $60 in State Minimum Costs, for a total of $120. This was a serious case. We had people going into a home, it was a drug -- involved with drugs, and guns pulled, police confronted 'em, the people ran, didn't cooperate, could have been a very dangerous situation, somebody could have been hurt, and I treat this as a very serious matter. The plea bargain that defendant entered into is below guidelines here, and -- but I think there's a good cause to depart from guidelines, due to the plea bargain that was entered into, and that's the reasons for the Court doing so.

This is a final judgment and sentence of the Court. I believe it to be proportionate and appropriate, given all the facts and circumstances as I understand them to be. If you wish to ask the Court of Appeals to allow you to appeal this matter, Mr. Bradley, you should fill out the pale green form being handed to you and file it with the Court not later than 21 days from today, okay? Do you understand, Mr. Bradley?

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA,

an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the

habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that his constitutional rights were violated because he was sentenced disproportionately to his co-defendant, the court improperly scored the sentencing guidelines under state law, and the court relied upon two dismissed felonies when computing the guideline score. Petitioner also claims that his trial counsel was ineffective during sentencing.

Petitioner claims that the judge inaccurately considered the sentencing guidelines. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that petitioner challenges the correctness of his sentence on the basis of state law, petitioner is not entitled to habeas review unless there has been a fundamental

miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990).

Furthermore, MCL § 750.529 provides for punishment of imprisonment for life or for any term of years. Therefore, petitioner has not set forth a federal question because his sentence was imposed within the state statutory limit. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988).

> [A] state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. *E.G.*, *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648-49, 91 L.Ed. 8181 (1947); *United States v. Jackson*, 696 F.2d 320, 321 (5th Cir. 1983); *Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976). If the sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentence's discretion and thereby deprived petitioner of his liberty.

*Id.* at 923-24.

To the extent that petitioner claims that he should not have received a more severe sentence than his co-defendant, it is the opinion of the undersigned that this claim lacks merit. The trial judge set forth a reasonable analysis in explaining petitioner's sentence in comparison to his co-defendant. Moreover, the Sixth Circuit has concluded that a sentence that falls within the maximum penalty authorized by statute "generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). Petitioner's sentence does not exceed the statutory limit nor has petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

Petitioner claims that he received ineffective assistance of counsel at sentencing. There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions

might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

Petitioner has not shown that he received ineffective assistance of counsel. Counsel argued at sentencing that petitioner should receive a reduced sentence similar to the sentence that petitioner's co-defendant received. The court disagreed with counsel's argument and articulated valid reasons for giving petitioner the sentence that petitioner received. The record does not support a claim that counsel was ineffective.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could

not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   May 17, 2010